# IN THE SUPREME COURT OF IOWA

No. 16–0364

Filed April 21, 2017

Amended July 17, 2017

**BRADLEY A. CHICOINE, DR. BRADLEY A. CHICOINE, D.C., P.C., MARK A. NILES, NILES CHIROPRACTIC, INC., ROD R. REBARCAK,** and **BEN WINECOFF,** on Behalf of Themselves and Those Like Situated**,**

    Appellants,

and

**STEVEN A. MUELLER, BRADLEY J. BROWN, MARK A. KRUSE, KEVIN D. MILLER,** and **LARRY E. PHIPPS,** on Behalf of Themselves and Those Like Situated**,**

    Appellants,

vs.

**WELLMARK, INC.** d/b/a **WELLMARK BLUE CROSS AND BLUE SHIELD OF IOWA,** an Iowa Corporation, and **WELLMARK HEALTH PLAN OF IOWA, INC.,** an Iowa Corporation,

    Appellees.

---

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

A district court indefinitely stayed state antitrust proceedings in favor of further proceedings in federal multidistrict antitrust litigation. **RULING ON MOTION VACATED; REMANDED WITH DIRECTIONS.**

Glenn L. Norris of Hawkins & Norris, P.C., Des Moines, and Steven P. Wandro and Kara M. Simons of Wandro & Associates, P.C., Des Moines, for appellants.

Hayward L. Draper, Ryan G. Koopmans, and John T. Clendenin (until withdrawal) of Nyemaster Goode, P.C., Des Moines, for appellees.

**HECHT, Justice.**

Thirteen Iowa chiropractors filed this class-action lawsuit against Iowa's largest health insurer alleging it conspired with nonparty competitors to fix prices, allocate markets, and engage in other anticompetitive conduct in Iowa in violation of the Iowa Competition Law. *See* Iowa Code ch. 553 (2015). The Iowa chiropractors allege that this anticompetitive conduct has had the purpose and effect of driving down chiropractor reimbursements to discriminatorily low levels.

On the defendants' motion, and over the plaintiffs' objection, the district court stayed the case in its entirety pending further proceedings in federal multidistrict litigation (MDL) in Alabama brought under the federal antitrust laws. *See* 15 U.S.C. §§ 1, 4 (2012). The Alabama MDL includes physicians, hospitals, and other healthcare providers from around the country as plaintiffs. As in the present case, the plaintiffs allege conspiracies by the insurers to fix prices and allocate markets. However, the MDL complaint alleges that the conspiracies have had the effect of driving down *all* healthcare provider reimbursements to artificially low levels. One of the plaintiffs in the Alabama MDL is an Iowa chiropractor and one of the defendants is Iowa's largest health insurer.

On interlocutory review, we conclude the district court abused its discretion in staying the Iowa litigation pending further proceedings in the Alabama MDL. Resolution of the Alabama MDL, which is still in bellwether pretrial proceedings, could take years, and although there is some overlap between the two cases, there are also considerable differences in the issues they present. Accordingly, we vacate the order staying this action and remand for further proceedings.

## I. Background Facts and Proceedings.

The plaintiffs are Iowa chiropractors who treat patients enrolled in health insurance plans offered or administered by the defendants, Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa and Wellmark Health Plan of Iowa, Inc. (collectively, Wellmark). Wellmark is an Iowa health insurance corporation and a member of the national Blue Cross and Blue Shield Association (BCBSA), a federation of over thirty-five independent Blue Cross and Blue Shield (BCBS) affiliates known as the Blues.

Wellmark contracts with the plaintiffs and other healthcare providers who agree to provide services to BCBS subscribers at or under a discounted fee in exchange for being added to Wellmark's network of preferred providers. Wellmark shares this fee schedule and provider network with the self-funded employee plans it administers in exchange for a fee and with the other BCBS affiliates in exchange for their promises to not use the BCBS trademark in Iowa and to share their own fee schedules and provider networks with Wellmark's subscribers (the BlueCard® Program) seeking medical services in other states. *See Mueller v. Wellmark* (*Mueller II*), 861 N.W.2d 563, 566–67 (Iowa 2015).

**A. Prior Iowa Chiropractic Litigation.** Wellmark's involvement in the BlueCard® Program and its arrangements with self-funded employee plans have been challenged by Iowa chiropractors in related chiropractic litigation that has come before our court four times. *See Abbas v. Iowa Ins. Div.*, 893 N.W.2d 879 (Iowa 2017); *Wellmark, Inc. v. Iowa Dist. Ct.*, 890 N.W.2d 636 (Iowa 2017); *Mueller II*, 861 N.W.2d 563; *Mueller v. Wellmark, Inc.* (*Mueller I*), 818 N.W.2d 244 (Iowa 2012). For a brief summary of those cases, see *Wellmark, Inc.*, 890 N.W.2d at 638–42.

**B. *Chicoine* Petition.** On October 5, 2015, the plaintiffs filed a class-action petition alleging Wellmark violated section 553.4 of the Iowa Competition Law under the rule of reason. *See* Iowa Code § 553.4 ("A contract, combination, or conspiracy between two or more persons shall not restrain or monopolize trade or commerce in a relevant market.").[1] The petition alleges Wellmark entered a combination or conspiracy with potential competitors—the other BCBS affiliates and self-funded employee plans Wellmark administers—to restrain trade, commerce, and competition in the sale and purchase of healthcare services in Iowa. The plaintiffs argue this alleged conduct violates the Iowa Competition Law under the rule of reason because "the anticompetitive consequences of such conspiracy or conspiracies outweigh any procompetitive benefits."

The alleged restraints include agreements to

(a) . . . artificially fix a lower price for chiropractic services and to limit or exclude chiropractic coverage from health plans offered by other potential competitors for chiropractic services in Iowa[;]

(b) . . . allocate territories and not to compete with each other in those allocated territories[;]

(c) impose maximum fee schedules to which chiropractors must agree with defendants, their co-conspirators, and with each other in order to provide diagnostic and treatment services for their patients in Iowa;

(d) prescribe fees for chiropractic services which are discriminatory to doctors of chiropractic in relation to the

---

[1]Five of the named plaintiffs in this case, led by Steven A. Mueller, D.C., previously challenged Wellmark's preferred-provider arrangements as constituting a per se violation of section 553.4 of the Iowa Competition Law. *See Mueller II*, 861 N.W.2d at 574–75 (affirming summary judgment in favor of Wellmark on the plaintiffs' per se liability claim); *Mueller I*, 818 N.W.2d at 264. The *Mueller* plaintiffs contend this lawsuit asserting a rule-of-reason claim is a continuation of *Mueller I*, commenced in May 2008. *See* Iowa Code § 614.10 ("If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first.").

fees for other health care practitioners for the same or similar services;

(e) prescribe limitations upon and make optional the coverage of diagnostic and treatment services of chiropractors while not imposing the same standards and practices to the coverage of diagnostic and treatment services of other practitioners of health care in Iowa licensed under the chapters of Title IV, subtitle 3, of the Code of Iowa [Chapters 147 through 158];

(f) historically enter into a contract, combination and conspiracy in restraint of trade or commerce in Iowa with health care providers other than chiropractors to first boycott and then later discriminate against the diagnostic and treatment services to members provided by Iowa chiropractors[.]

The petition also challenges Wellmark's attempt to implement plans and policies for itself and its alleged coconspirators under which

(g) . . . subscriber-patients who elected to seek chiropractic treatment would be covered for only three treatment procedures per visit to a doctor of chiropractic regardless of the acuity, severity, or nature of the patient's condition or the number of her complaints;

(h) . . . subscriber-patients and those persons who were employees of self-funded entities administered by Wellmark . . . would be required to seek preapproval . . . before any chiropractic services would be paid, which policy solely related to chiropractic services and to no other services of any other health care practitioner licensed by the state of Iowa;

(i) . . . Iowa chiropractors only are subject to a capitated payment system whereby chiropractors are paid at [a] rate less than 50% of the rate payable for PPO services, while all other Iowa licensed practitioners covered by WHPI are paid pursuant to a schedule derived from the PPO payment schedules with a 7-9% discount.

The plaintiffs seek certification of a class comprised of all similarly situated chiropractors who were either Iowa citizens (1) on the date the petition was filed or (2) "at all times during their Iowa licensure as doctors of chiropractic after May 20, 2004, which is four years prior to

the filing of the Plaintiffs' First [Amended Petition] in [*Mueller I*, 818 N.W.2d 244]."

**C. Motion to Stay.** In December 2015, Wellmark filed a motion to stay proceedings in favor of multidistrict litigation pending in the United States District Court for the Northern District of Alabama. *See In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, No. 2:13–cv–20000 (N.D. Ala. 2012) [hereinafter MDL No. 2406]. MDL No. 2406 consolidated for pretrial purposes a significant number of federal antitrust cases brought by various healthcare providers and health insurance subscribers against the BCBSA and at least one affiliate. Wellmark asserted a stay was appropriate because MDL No. 2406 was filed first, had advanced farther, concerned the same putative class, and involved common issues and parties. Wellmark also argued a stay would be consistent with principles of comity, give the Iowa court the benefit of federal judicial expertise, save significant resources by eliminating duplicative efforts, and help avoid inconsistent interpretations of the Iowa Competition Law and the Federal Sherman Act.

MDL No. 2406 has two master class-action complaints, a provider complaint and a subscriber complaint. Only the provider complaint is relevant to this case. The most recent version of the provider complaint available in the record on appeal was filed in MDL No. 2406 on November 25, 2014, by medical suppliers and healthcare providers, including Iowa chiropractor Joseph Ferezy, D.C. d/b/a Ferezy Clinic of Chiropractic and Neurology (FCCN). The provider complaint alleges Wellmark, the other BCBS affiliates, and the BCBSA conspired to allocate markets, fix prices, and boycott providers outside each affiliate's allocated market in violation of Section 1 of the Sherman Act under per se, quick-look, or rule-of-reason analyses. The plaintiffs ask the

federal court to certify a class of healthcare providers and a subclass of plaintiffs for Iowa that includes all Iowa chiropractors who provided insured services within four years of the filing of the action, with Joseph Ferezy as representative for the subclass of Iowa chiropractors.

With respect to Iowa chiropractor Joseph Ferezy's claims, the complaint states,

> During the relevant time period, FCCN provided medically necessary, covered services to patients insured by Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa ("Wellmark") or who are included in employee benefit plans administered by Wellmark pursuant to his in-network contract with Wellmark, and billed Wellmark for the same. FCCN was paid less for those services than he would have been but for Defendants' anticompetitive conduct and has been injured by Defendants' conduct as a result thereof. On information and belief, FCCN has also provided medically necessary, covered services to other Blue Cross and Blue Shield Plan members through national programs, has billed for same, and has been paid less for those services than he would have been but for Defendants' anticompetitive conduct.

*Corrected Consolidated Second Amended Provider Complaint*, MDL No. 2406, No. 2:13–cv–20000, EFC No. 236, at *29, ¶51 (N.D. Ala. filed Nov. 25, 2014).

On October 30, 2015, the court in MDL No. 2406 issued a scheduling order adopting a bellwether approach to streamlining MDL No. 2406. *See Order*, MDL No. 2406, No. 2:13–cv–20000, EFC No. 469 (N.D. Ala. filed Oct. 30, 2015). The court stayed all but the two cases filed in its district until January 2018—*American Electric Motor Services, Inc. v. Blue Cross & Blue Shield of Alabama*, Case No. 2:12-cv-02169, a subscriber case, and *Conway v. Blue Cross & Blue Shield of Alabama*, Case No. 2:12-cv-02532, a provider case (collectively, the bellwether cases). *Id.* at 5. The court then set an accelerated schedule for pretrial

proceedings in the two bellwether cases to occur throughout 2017.[2] *Id.* at 5–6. A pretrial conference would occur no sooner than January 2018, with a trial date for the two bellwether cases to be set by separate order. *Id.* at 6.

**D. Subsequent Proceedings.** The plaintiffs resisted Wellmark's motion to stay this action in December 2015, asking the court to conclude under standards established in *First Midwest Corp. v. Corporate Finance Associates* that a stay is unwarranted. *See* 663 N.W.2d 888, 891 (Iowa 2003). Wellmark replied, and the district court held a hearing in January 2016. On January 28, 2016, the district court stayed the case "in favor of further proceedings in [MDL No. 2406], until further order of this court." We granted the plaintiffs' application for interlocutory appeal.

**II. Standard of Review.**

We review the decision to grant or deny a stay for abuse of discretion. *Id.* at 890–91. Reversal is warranted when discretion "is capriciously exercised or abused." *Id.* (quoting *Chrysler Credit Corp. v. Rosenberger*, 512 N.W.2d 303, 305 (Iowa 1994)). Discretion is abused unless the evidence clearly and convincingly shows that the need for a stay outweighs the potential for harm or prejudice to the other litigants. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255, 57 S. Ct. 163, 166 (1936) ("[T]he suppliant for a stay must make out a clear case of hardship or

---

[2]The court required factual discovery to be completed by January 13, 2017; expert reports to be submitted by February 28, 2017 and March 28, 2017, for the plaintiffs and defendants, respectively; expert discovery to be completed by April 28, 2017; class certification and *Daubert* motions to be submitted by June 1, 2017; and potentially dispositive motions to be submitted by September 7, 2017. *Order*, MDL No. 2406, No. 2:13-cv-20000, EFC No. 469, at 5–6. The court also set a nonrecord economics day in January 2017 so the parties could educate the court about relevant economic issues. *Id.*

inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else."); *see also Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) ("The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative.").

### III. Analysis.

The issue on appeal is whether the district court abused its discretion by staying the plaintiffs' lawsuit in its entirety pending further proceedings in MDL No. 2406. We begin by reviewing the law governing stays.

A "stay" is the temporary postponement of all or part of a judgment or judicial proceeding by court order. *Stay, Black's Law Dictionary* (10th ed. 2014).[3] The power to grant a stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254, 57 S. Ct. at 166; *see also Brenton Bros. v. Dorr*, 213 Iowa 725, 728, 239 N.W. 808, 809 (1931). District courts have broad discretion in deciding whether to grant or deny a stay. *See First Midwest Corp.*, 663 N.W.2d at 890. That discretion, however, is not unbridled. *Id.*

A district court must act reasonably when deciding whether to stay a case in favor of a proceeding in another jurisdiction, taking into

---

[3]We recognize three classes of stays: those issued under a court's common law authority to control the disposition of causes on its docket, those granted pursuant to statute, and those associated with appellate proceedings and certain postjudgment motions. *Brenton Bros. v. Dorr*, 213 Iowa 725, 728, 239 N.W. 808, 809–10 (1931); *see also* Iowa R. Civ. P. 1.1006 (permitting a stay pending the resolution of motions for judgment notwithstanding the verdict, for a new trial, or to vacate or modify a judgment). The first class of stay is at issue in this case.

account the parties' competing interests, the consequences of a stay to the parties, and other relevant considerations. *See Landis*, 299 U.S. at 254–58, 57 S. Ct. at 166–67. The other relevant considerations include

> comity,[4] the desirability of avoiding a multiplicity of forums, whether the foreign litigation is at an advanced or preliminary stage, the likelihood of obtaining complete relief in the foreign jurisdiction, and the possibility that a judgment entered in the foreign jurisdiction will give rise to collateral estoppel or will render the matter before the court res judicata.

*First Midwest Corp.*, 663 N.W.2d at 891 (quoting 1 Am. Jur. 2d *Actions* § 78, at 773 (1994)). Other considerations include the relative convenience of the forums; which action was filed first; the forums' subject-matter knowledge and expertise; whether the actions were brought in good faith; and the similarity of "the parties, causes of action, and issues in the two actions." E.H. Schopler, Annotation, *Stay of Civil Proceedings Pending Determination of Action in Federal Court in Same State*, 56 A.L.R.2d 335, § 2, Westlaw (database updated April 2017) (footnotes omitted).

"Where a prior foreign action involves the same parties and the same issues and is pending before a court capable of doing prompt and complete justice, the court's discretion may be freely exercised in favor of a stay." *First Midwest Corp.*, 663 N.W.2d at 891 (quoting 1 Am. Jur. 2d *Actions* § 78, at 773). Conversely, where the parties or issues are different, a stay will only be justified in rare circumstances. *See Landis*, 299 U.S. at 255, 57 S. Ct. at 166. A stay may be justified in favor of another case involving different parties if both cases require "the minute

---

[4]"Comity is . . . a principle in accordance with which the courts of one state will give effect to the laws and judicial decisions of another, not as a matter of right but out of deference and respect." *Jacobsen v. Saner*, 247 Iowa 191, 193, 72 N.W.2d 900, 901 (1955).

investigation of intercorporate relations, linked in a web of baffling intricacy" or present "novel problems of far-reaching importance to the parties or public." *Id.* at 256, 57 S. Ct. at 166. Likewise, a stay may be justified in favor of another case involving different issues of fact and law if "in all likelihood it will settle many [issues] and simplify them all." *Id.*

The seminal case concerning a trial court's common law authority to stay a case *pendent lite* is *Landis.* In *Landis,* the Supreme Court held that the terms of a stay must be moderate in extent and unoppressive in effect. *Id.* at 256, 57 S. Ct. at 166. "[A] stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Id.* at 257, 57 S. Ct. at 167. The Court concluded the trial court abused its discretion by granting a stay pending the final appellate decision in another case that was still in pretrial proceedings because the stay would be in effect for years and might ultimately be of little to no benefit to the stayed case, depending on how the other case was decided. *Id.* at 256–57, 57 S. Ct. at 167. The stay did not become moderate merely "because conceivably the court that made it may be persuaded at a later time to undo what it has done." *Id.* at 257, 57 S. Ct. at 167.

In this case, the only limit the district court placed on the duration of the stay was that it would remain in effect "until further order of this court." Absent the district court's decision to end the stay, it will continue in effect through a decision by the district court in the bellwether cases and any appeal to the United States Court of Appeals for the Fifth Circuit and United States Supreme Court. Once the bellwether cases are resolved, the stay could continue while the nonbellwether cases proceed through the pretrial phase of MDL

No. 2406. The stay order concluded a stay was warranted even though "the eventual trial of the Iowa portion of the MDL action may not come for several years," indicating the district court might even consider letting the stay remain in effect through the remand and trial of the Iowa portion of the MDL action.

As in *Landis*, the stay in this case serves to prolong the decision-making process for years without adequately protecting or advancing the plaintiffs' interest in receiving a prompt decision. At a minimum, the stay will last until 2018—the earliest date the bellwether cases could precede to trial under the current scheduling order in MDL No. 2406. In all likelihood, the stay could last several years or even a decade or more as the bellwether cases and the consolidated federal case involving the Iowa plaintiff move through their trial and appellate stages. Such a lengthy and indefinite stay violates the plaintiffs' interest in prompt and complete justice. *Cf. First Midwest Corp.*, 663 N.W.2d at 891. The stay does not become moderate simply because the plaintiffs could petition the court to enter an order ending the stay or because the court could end the stay sooner of its own accord. *See Landis*, 299 U.S. at 257, 57 S. Ct. at 167.

Furthermore, any benefit of a decision in MDL No. 2406 advancing the resolution of this case is uncertain for several reasons. First, if MDL No. 2406 is resolved under a per se or quick-look theory, it will provide little or no benefit to the economic and econometric analyses in the Iowa plaintiffs' rule-of-reason claim. Second, the federal court in MDL No. 2406 has adopted a bellwether approach, making it more likely that the Iowa portion of MDL No. 2406 will settle before trial or even pretrial proceedings, thus removing many of the potential benefits of a stay in this case. *See In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir.

1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar."). The bellwether cases involve Alabama plaintiffs, and it is possible that competitive conditions in Alabama may have no connection to those in Iowa.[5]

Finally, as the district court found, the plaintiffs raised approximately "ten detailed specifications of wrongdoing" concerning Wellmark's treatment of *Iowa chiropractors* while MDL No. 2406 focused on two allegations concerning the BCBSA's treatment of *all healthcare providers.* Although there appears to be an allegation common to both cases that the BCBSA entities have generally conspired to stay out of each other's territories (i.e., Iowa and South Dakota in the case of Wellmark), the present case alleges discriminatory treatment of chiropractors instead of artificially low reimbursements for all healthcare providers. In addition, the present case alleges other anticompetitive agreements, including between Wellmark and self-insurers. It is unclear in our view whether any resolution of claims in MDL No. 2406 would result in the resolution of claims in this action. *See Landis*, 299 U.S. at 256, 57 S. Ct. at 166 (noting a stay may be justified in favor of a case with nonidentical issues if "in all likelihood it will settle many and simplify them all").

An indefinite delay for uncertain benefits is patently immoderate. *Cf. Univ. of Utah Hosp. & Med. Ctr. v. Twin Falls County*, 842 P.2d 689, 692 (Idaho 1992) (finding the stay of an application for medical indigency

---

[5]A federal MDL is for pretrial purposes only, and cases are returned to their home district for trial. *See* 28 U.S.C. § 1407(a).

pending a final appellate decision in a disability application to be patently unreasonable), *superseded by statute*, 1996 Idaho Sess. Laws 1360, *as recognized in St. Luke's Magic Valley Reg'l Med. Ctr., Ltd. v. Bd. of Cty. Comm'rs*, 237 P.3d 1210, 1215 (Idaho 2010). "Relief so drastic and unusual overpasses the limits of any reasonable need, at least upon the showing made when the motion was submitted." *Landis*, 299 U.S. at 257, 57 S. Ct. at 167. Under the circumstances, we conclude it was an abuse of discretion for the district court to stay this litigation.

We disagree with Wellmark's contention that Iowa Code section 553.2 supports a stay here.[6] Although section 553.2 provides that the Iowa Competition Law "shall be construed to complement and be harmonized with" federal antitrust laws, it also directs that it shall not be construed "in such a way as to constitute a delegation of state authority to the federal government." Iowa Code § 553.2. The purpose of section 553.2 is to achieve "a uniform standard of conduct so that businesses will know what is acceptable conduct and what is not acceptable conduct." *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 446 (Iowa 2003). But attainment of that purpose does not necessarily require an Iowa state trial court to wait for and then defer to the legal rulings of an Alabama federal trial court in a specific case. Our courts are capable of applying antitrust precedent.

---

[6]Iowa Code section 553.2 provides,

> This chapter shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose as this chapter. This construction shall not be made in such a way as to constitute a delegation of state authority to the federal government, but shall be made to achieve uniform application of the state and federal laws prohibiting restraints of economic activity and monopolistic practices.

**IV. Disposition.**

The order of the district court is vacated, and the case is remanded.

**RULING ON MOTION VACATED; REMANDED WITH DIRECTIONS.**

All justices concur except Appel, J., who takes no part.